IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>HAROLD GRIFFIN | Crim. No. 07-28 |

**MEMORANDUM ORDER**

On February 7, 2008, a jury convicted defendant of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g). The court accepted the verdict as the judgment of the court.

Defendant now moves, under Fed. R. Crim. P. 33(a), for a new trial. The rule provides that a district court should grant a new trial on defendant's motion "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Here, defendant argues that the motion should be granted because the verdict is so against the weight of the evidence that allowing it to stand would work a miscarriage of justice.[1]

The Third Circuit has set out how a district court should evaluate a Rule 33 motion based on the weight of the evidence:

---

[1] For clarity's sake, it is important to note that defendant has not moved for a directed judgment of acquittal under Rule 29(c).

-1-

> A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted. Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case. Thus, motions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases.

*United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (internal citations, quotation marks, and alterations omitted).

The trial largely revolved around a comparison of the credibility of defendant, on the one hand, and Philadelphia police officers Sergeant Walter Medycki and Officer Maurice Alfano, on the other. Defendant testified that, in the early morning hours of May 20, 2006, as he walking from his workplace to his home, he was assaulted by a man with a firearm near the intersection of Godfrey Avenue and Old York Road in Philadelphia. The assailant, according to defendant, fired the weapon into the ground, and the bullet ricocheted off the sidewalk and into defendant's leg, causing a bleeding injury. Defendant testified that he then wrestled with the assailant, eventually capturing the firearm, and the assailant, having lost the weapon, ran away. According to defendant, he then picked up various items off of the sidewalk, including two live rounds of ammunition, and jogged toward a senior citizens' home to ask for assistance. While en route, defendant saw a police car pull up behind him. Defendant then flagged the officer— Medycki—down, so that he could hand over the weapon and tell about his

assault. Medycki, however, would not listen, and instead arrested defendant and transported him to the police station. According to defendant, no one at the station would listen to his story or tend to his wound.

Medycki told a somewhat different story. He testified that he drove to the intersection of Godfrey and Old York on the morning in question because he received a report that shots had been fired in the area. Initially, he saw nothing. Then, he noticed defendant jogging across the road with what appeared to be a firearm in his hand. Medycki turned around and followed defendant into the parking lot of a senior citizens' center, yelling for defendant to stop. Defendant did not acknowledge Medycki's calls, so Medycki got out of the car, and began walking behind defendant, still yelling for him to stop. As Medycki approached defendant, defendant spun around and pointed the firearm at Medycki's chest. Medycki knocked the firearm out of defendant's hands and arrested him. Medycki then directed Officer Alfano to transport defendant to the police station, and he directed other officers to search the area. The officers found nothing that would shed light on the reported shots. Medycki also testified that defendant did not tell him that defendant had been assaulted, or that defendant was injured. Moreover, Medycki testified that he noticed no injury (despite defendant's testimony that his leg was actively bleeding). Officer Alfano testified that it was he, not Medycki, who took defendant to the police station. Alfano also testified that defendant told him nothing about any assault, nor did defendant complain of any injury, nor did Alfano notice any injury. Alfano further

testified that he took defendant's biographical information and went though a medical checklist to ensure that defendant was not injured, and that at no point did defendant appear to be injured, or complain of any injury.

On the basis of his testimony, defendant asserted a justification defense. That defense, under Third Circuit precedent, required defendant to prove by a preponderance of the evidence "(1) that the defendant or someone else was under unlawful and present threat of death or serious bodily injury; (2) that the defendant did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative that would avoid both the criminal conduct and the threatened death or injury; and (4) that there was a direct causal relationship between the criminal act and the avoidance of the threatened harm." *United States v. Dodd*, 225 F.3d 340, 342 (3d Cir. 2000).

In his motion papers, defendant argues that the jury's apparent rejection of this defense worked a miscarriage of justice because the evidence supporting it was overwhelming. The court cannot accept this argument. Though defendant's testimony would seem, if accepted, to fulfill all four elements of a justification defense, jurors could have, reasonably, chosen not to credit defendant's testimony. For example, defendant's account of making the effort to pick up two small live rounds of ammunition, which might have been difficult to see in the dark, before running away from an alleged life-or-death struggle, could have struck the jurors as implausible. Similarly, defendant's

decision to run, with the firearm, toward a senior citizens' home, rather than towards his own home, could have seemed unlikely. Moreover, the jurors could have credited Medycki's testimony that defendant did not inform him of any assault or of any injury. Indeed, Medycki testified that he directed some of his officers to search the area, which might have indicated to the jury that Medycki had tried in good faith to determine what happened that night, and was not, as the defense argued, ignoring evidence in order to arrest defendant and be finished with the situation. In addition, the jurors could have credited Alfano's testimony that he also was not told about any assault and that, despite going through a medical checklist with defendant, he was not informed of any injury. On the basis of these points of tension, it would have been reasonable for the jurors to conclude that defendant's entire story of the assault was not likely to be true.

None of this is to say that the evidence was overwhelmingly against defendant. Defendant's testimony was not outlandish, nor was the officers' testimony so ironclad that it could not but be believed.[2] But, in evaluating defendant's testimony and

---

[2] Defendant identifies several perceived weaknesses in the officers' testimony.

First, defendant argues that, upon seeing defendant in his rear view mirror, Medycki would not have had time to complete a u-turn and catch up with defendant in the parking lot of the senior citizens' center. The jury, however, had more than ample evidence of the distance between Medycki and the defendant, in the form of maps and pictures of the scene. The court sees no reason to question the jurors' judgment of how long such a u-turn might take. Moreover, it does not seem implausible that a person in an automobile could complete a u-turn on a deserted street, drive one city block, and catch up with a person jogging into a parking lot.

Second, defendant argues that, at such a distance, Medycki could not have recognized the item in defendant's hand as a firearm, particularly given that the firearm was wrapped in tape and did not look like a firearm, as its stock had been removed. But Medycki testified that he thought the item was a gun, in part, because of the way defendant was carrying it. The court concludes

comparing to the officers', the jury could reasonably have found that the evidence weighed against defendant's story. Thus, the court cannot conclude that the jury's verdict, which seems consistent with a fair—if not the only plausible—weighing of the evidence, works a miscarriage of justice, or that vacating that verdict to hold a new trial would serve the interests of justice.

* * * * *

AND NOW, this 3d day of March, for the foregoing reasons, defendant's motion for a new trial (Docket No. 54) is DENIED.

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.

---

that the jury could reasonably have believed that defendant's manner of carrying the item suggested to Medycki that it was a firearm.

Third, defendant points out that Medycki did not record in his police report any allegation that defendant pointed the firearm at him. At trial, defendant argued that this omission tended to show that Medycki testimony was, at best, an embellished version of what happened that morning. This was a fair argument to make to the jury, but it would not have been unreasonable for the jury to discount it, as Medycki further testified that police reports are often brief and would not necessarily include such a detail.

Fourth, defendant argues that Alfano's testimony could not have been believed because the Government could not produce the medical checklist about which Alfano testified. This was a fair point to make to the jury, but it would also have been reasonable for the jurors to (a) believe that a negative checklist (that it, one not reflecting any injuries), could have gotten lost over the past year, and (b) still believe Alfano's account of going through the checklist with defendant.